UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WAYNE D. NASH, on behalf of himself
and all others similarly situated,

Plaintiff,

vs.

Case No.  2:04-CV-369-FtM-29DNF

LEE MEMORIAL HEALTH SYSTEM and
AMERICAN HOSPITAL ASSOCIATION,

Defendants.

_____

ORDER

This matter comes before the Court on Defendant Lee Memorial
Health Systems's Motion to Dismiss Plaintiff's First Amended
Complaint (Doc. # 57), filed on October 25, 2004.  Plaintiff Wayne
D. Nash filed a Response in opposition on November 18, 2004. (Doc.
# 67.)

Having carefully considered the submissions of the parties and
the wealth of case law addressing the issues sub judice, this Court
determines that Defendant's motion to dismiss should be granted to
the extent that Plaintiff's federal law claims should be dismissed
with prejudice, and Plaintiff's state law claims should be
dismissed without prejudice for reassertion in state court.

I.   Background

Plaintiff Wayne D. Nash states in his Amended Complaint that
he sought emergency medical treatment at Lee Memorial Hospital in

1

Cape Coral, Florida on April 1, 2001 after breaking his leg in a boating accident. (Doc. # 4 at ¶ 25.)  Plaintiff contends that Defendant requested a $4,000.00 deposit from Plaintiff prior to agreeing to perform the surgery, which Plaintiff could not afford to pay. (Id.)  Plaintiff submits that his leg surgery was a success; however, Plaintiff argues that the $15,033.60 bill he received subsequent to the surgery was unfair because $15,033.60 is "almost three (3) times what an insurance company would typically pay for the same surgery." (Id.)  In addition, Plaintiff claims that Defendant aggressively sought payment of the bill from Plaintiff and "began interrogating and harassing Plaintiff about his hospital bill immediately after his surgery interrogating Plaintiff about what money and assets he had." (Id. at ¶ 26.)

Plaintiff filed his putative Class Action Complaint against Lee Memorial Health Systems (LMHS) on July 7, 2004. (Doc. # 1.)[1] On July 22, 2004, Plaintiff filed his Amended Class Action Complaint (Doc. # 4) in which Plaintiff added as a Defendant the American Hospital Association (AHA). Thereafter, on July 12, 2005, this Court dismissed Defendant AHA from this action upon the

---

[1] Plaintiff moved for class certification on October 5, 2004 (Doc. # 44), and Defendant filed its Memorandum in Opposition to the Motion for Class Certification on November 4, 2004. (Doc. # 63.)  As this Court has determined that Plaintiff's action should be dismissed, it is unnecessary for this Court to adjudicate Plaintiff's Motion for Class Certification. (Doc # 44.)

parties' voluntary notice of dismissal of AHA. (Docs. # 93-96.)[2]

In the Amended Complaint, Plaintiff asserts both state and federal claims.  This court will not address Plaintiff's claims in the order in which they were asserted by Plaintiff.  Instead, as the basis for subject matter jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. § 1331, the Court will examine Plaintiff's claims in the order of their jurisdictional importance.

In Count One of Plaintiff's Amended Complaint, Plaintiff asserts a claim for third party breach of contract. (Doc. # 4 at ¶¶ 40-45.)  Plaintiff argues that Defendant LMHS, as a tax-exempt organization under 26 U.S.C. § 501(c)(3) (hereinafter "Section 501(c)(3)"), "entered into an express and/or implied Agreement with the United States Government" for the benefit of Plaintiff and other uninsured third parties. (Doc. # 4 at ¶ 41.)[3]  Specifically, Plaintiff alleges as follows:

> Defendant LMHS, as a purported charitable entity under 26 U.S.C. § 501(c)(3), entered into an express and/or implied Agreement with the United States Government pursuant to §501(c)(3) that in return for a substantial federal income tax exemption valued in the millions of dollars it would: operate exclusively for charitable

---

[2] As Defendant AHA has been dismissed from this action, Defendant AHA's Dispositive  Motion to Dismiss Amended Complaint (Doc. # 31) is **DENIED AS MOOT.**

[3] Section 501(c)(3) of the Internal Revenue Code exempts from federal taxation "[c]orporations . . . organized and operated exclusively for religious, charitable, scientific, testing for public safety, literacy, or educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual." 26 U.S.C. § 501(c)(3).

> purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; not pursue outstanding medical debt from the Plaintiff and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals or entities.

(Doc. # 4 at ¶ 41.)[4]

Plaintiff alleges that Defendant breached its express and/or implied "contracts" with the Untied States Government and the State of Florida by engaging in the following conduct:

> failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class significantly more than its insured patients for the same medical services; failing to use its net assets and revenues in the hundreds of millions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class; allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals; and upon information and belief, providing substantial discounts off the gross charges to its Board of Directors, to the Board of Directors of the hospitals comprising the LMHS system, and to entities connected to its Board of Directors.

(Doc. # 4 at ¶ 44.)

---

[4] Similarly, in Count One, Plaintiff asserts that he and other putative class members are the intended third-party beneficiaries of "an express and/or implied Agreement" between Defendant and the State of Florida pursuant to Florida Statues sections 196.192, 196.197, and 199.183 as well as Article VII, section 3 of the Florida Constitution. (Doc. # 4 at ¶ 42.)

Plaintiff argues that as a result of the alleged breaches, Plaintiff and putative class members have been deprived of the benefit of Defendant's agreements with Federal and State governments and that Defendant's aforementioned conduct has caused economic and other injuries to Plaintiff and purported class members. (<u>Id.</u>)

In Count Three, Plaintiff alleges that Defendant has breached the duty of good faith and fair dealing implicit in its alleged contractual agreements with the United States pursuant to Section 503(c)(3) and the State of Florida pursuant to Florida Statutes sections 196.192, 196.197, and 199.183 as well as Article VII, section 3 of the Florida Constitution, discussed <u>supra</u> in Count One. (Doc. # 4 at ¶¶ 51-53.) Plaintiff asserts, in the alternative, that the conduct described in Count One constitutes a breach of the duty of good faith and fair dealing owed to Plaintiff and putative class members as a result of the contract between Plaintiff and putative class members and Defendant which was created upon Plaintiff and putative class members being admitted to Defendant's hospital for the purpose of receiving medical treatment. (<u>Id.</u> at ¶¶ 54-56.)[5]

In Count Four, Plaintiff contends that Defendant, upon accepting Section 501(c)(3) tax exemptions, "created and entered

---

[5] The breach of good faith and fair dealing alleged in Count Three is also applicable to Plaintiff's State law breach of contract claim asserted in Count Two, discussed <u>infra</u>.

into a public charitable trust to provide mutually affordable medical care to its uninsured patients." (Doc. # 4 at ¶ 58.) Plaintiff asserts that he and putative class members are the intended beneficiaries of the alleged public charitable trust. (Id. at ¶ 59.)[6]

In Count Six, Plaintiff asserts that Defendant has violated the Emergency Medical Treatment and Active Labor Act (EMTALA) 42 U.S.C. § 1395dd.  (Doc. # 4 at ¶¶ 70-74.) Plaintiff argues that Defendant improperly delayed the provision of emergency medical treatment to Plaintiff to inquire if Plaintiff was insured. (Id. at ¶ 73.) In addition, he argues that Defendant violated EMTALA by requiring him to sign a form guaranteeing payment in full for medical treatment before Defendant provided the required medical screening, stabilization, and treatment of Plaintiff's injuries. (Id.)  Plaintiff asserts that Defendant's conduct has caused "economic injury and other damages" to himself and putative class members. (Id. at ¶ 74.)

In addition to the above federal claims, Plaintiff asserts state law claims for breach of contract (Count Two)(Doc. # 4 at ¶¶ 46-50), violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count Five) (Doc. # 4 at ¶¶ 62-69), and unjust enrichment and constructive trust (Count Seven)(Doc. # 4 at

---

[6] Plaintiff also alleges that a similar charitable trust was created as a result of Defendant's acceptance of tax breaks on the State level. (Doc. # 4 at ¶ 58.)

¶¶ 75-78.)[7]  Plaintiff seeks injunctive and declaratory relief as well as monetary damages. (Doc. # 4 at ¶¶ 93-98.)[8]

Defendant Lee Memorial Health Systems (LMHS) seeks an order dismissing Plaintiff's First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Accordingly, the Court shall now address Defendant LMHS's Motion to Dismiss Plaintiff's

---

[7] Plaintiff's Amended Complaint also contains Counts Eight and Nine for "Civil Conspiracy/Concert of Action" and "Aiding and Abetting." (Doc. # 4 at ¶¶ 79-92.)  It is unnecessary for this Court to analyze Counts Eight and Nine because the parties have stipulated to the dismissal of Defendant AHA (Doc. # 95.)  The parties' Stipulation of Voluntary Dismissal of Defendant AHA (Doc. # 95) states: "The dismissal of the Civil Conspiracy/Concert of Action (Count 8) and Aiding and Abetting (Count 9) Claims shall be *with prejudice* to the extent that those claims applied to the underlying federal claims.  The dismissal of the Civil Conspiracy/Concert of Action (Count 8) and Aiding and Abetting (Count 9) Claims shall be *without prejudice* to the extent that those claims applied to the underlying state law claims.  Accordingly, the claims against the AHA are dismissed in their entirety, with prejudice in part and without prejudice in part, such that the AHA no longer remains in this case." (Doc. # 95 at 1.)

[8] Specifically, Plaintiff seeks an injunction ordering Defendant to cease and desist: "charging the Plaintiff and the Class the highest and full undiscounted costs of medical care; charging the Plaintiff and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices . . . to collect outstanding grossly inflated medical debt from the Plaintiff and the Class. (Doc. # 4 at ¶¶ 95.)  In addition, Plaintiff seeks "a prospective Order" requiring that Defendant: "provide mutually affordable medical care to the Plaintiff and the Class; to charge the Plaintiff and the Class no more for medical services than it charges their insured patients, and to cease their attempts to collect outstanding medical debt from the Plaintiff and the Class until they have complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiff and the Class through a graduated payment plan or other means." (Doc. # 4 at ¶ 96.)

First Amended Complaint (Doc. # 57.)

## II.  Standard of Review

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the facts of the complaint as true and views them in the light most favorable to the non-moving party.  See Magluta v. Samples, 375 F.3d 1269, 1273 (11th Cir. 2004)(citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Marsh v. Butler County Comm'n, 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The plaintiff is not required by the Federal Rules of Civil Procedure to "set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47.  All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement must be sufficient to afford the defendant "fair notice of what the claim is and the grounds upon which it rests." United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003)(quoting Conley, 355 U.S. at 47).  Thus, the issue in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is not whether the plaintiff will ultimately prevail on his or her claim, but rather,

whether the allegations contained in the complaint will be sufficient to allow discovery as to their proof. <u>Jackam v. Hosp. Corp. of Am. Mideast, Ltd.</u>, 800 F.2d 1577, 1579-80 (11th Cir. 1986).

Motions to dismiss for lack of subject matter jurisdiction pursuant Federal Rule of Civil Procedure 12(b)(1), on the other hand, may attack jurisdiction facially or factually. <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924, n.5 (11th Cir. 2003).  Where the jurisdictional attack is based on the face of the pleadings, as in the instant case, the court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990).  Courts may dismiss cases pursuant to Federal Rule of Civil Procedure 12(b)(1) upon finding that the plaintiff's claims are "clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous." <u>Lawrence</u>, 919 F.2d at 1529 (quoting <u>Eaton v. Dorchester Dev., Inc.</u>, 692 F.2d 727, 732 (11th Cir. 1982); <u>see also</u> <u>Bell v. Hood</u>, 327 U.S. 678, 682-683 (1946).

This court will analyze Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) rather than under Federal Rule of Civil Procedure 12(b)(1) because a dismissal under Rule 12(b)(6) is considered an adjudication of the case on the merits, <u>Federated</u>

9

<u>Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 399 n.3 (1981), while a dismissal under Rule 12(b)(1), on the other hand, is never on the merits of the claims and must always be without prejudice. <u>See</u> <u>Bell</u>, 327 U.S. at 682; <u>see also</u> <u>Verret v. Elliot Equip. Corp.</u>, 734 F.2d 235, 238 (5th Cir. 1984) (citing <u>Stanley v. Cent. Intelligence</u> <u>Agency</u>, 639 F.2d 1146, 1157 (5th Cir. Unit B Mar. 1981).[9]

## III. Analysis

### A. Jurisdiction

Pursuant to 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over federal questions, that is questions arising under the laws of the United States or an Act of Congress regulating commerce. "An action 'arises under' federal law when it is apparent from the face of the plaintiff's complaint that the plaintiff's cause of action is itself created by federal law." <u>Harris v. McDonald's Corp.</u>, 901 F.Supp. 1552, 1555 (M.D. Fla. 1995). Plaintiff asserts federal question jurisdiction on the face of his Complaint based on his claims pursuant to Section 501(c)(3) as well as Plaintiff's claims under the EMTALA.[10] Since Plaintiff's Tax Code and EMTALA claims are raised under federal law, this Court

---

[9] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981 as binding precedent.

[10] As noted, Plaintiff has also asserted pendent state law claims pursuant to 28 U.S.C. § 1367(a). However, as will be discussed <u>infra</u>, this Court declines to exercise supplemental jurisdiction over the state law claims.

has jurisdiction.

**B.   Plaintiff's Federal Claims**

The instant suit is one of many putative class action suits filed across the nation on behalf of uninsured patients alleging that hospitals breach implied contracts with the Government by accepting tax exempt status as charitable entities while, at the same time, engaging in practices prejudicial to those with limited means, such as charging "inflated" prices for emergency medical services.  As the docket in this case reflects, the Judicial Panel on Multidistrict Litigation has rejected motions to transfer and consolidate similar cases, leaving the cases, including the instant case, to be decided by district courts throughout the nation.  <u>See</u> <u>In re Not-for-Profit Hosps./Uninsured Patients Litig.</u>, 341 F.Supp.2d 1354, 1355-1356 (J.P.M.L. Oct. 19, 2004).

**1.   Defendant's 501(c)(3) Tax-Exempt Status**

Plaintiff asserts that Defendant, in order to gain tax exempt status pursuant to Section 503(c)(3), entered into an agreement with the Federal Government whereby Defendant agreed to "operate exclusively for charitable purposes; provide emergency room medical care . . . without regard to [a patient's] ability to pay for such medical care; provide mutually affordable medical care . . . ; not pursue outstanding medical debt . . . by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals or entities." (Doc. # 4

11

at ¶ 41.)  This alleged implied contract forms the basis for the majority of Plaintiff's federally based claims.

Defendant counters that no implied contract exists between Defendant and the Federal Government and that, even if such a contract existed, Plaintiff does not have standing to pursue a claim as a third-party beneficiary of any such contract.  In addition, Defendant asserts that, while it is a Section 501(c)(3) tax-exempt charitable institution, it is not tax-exempt by virtue of Section 501(c)(3).  Defendant explains that it is exempt from federal taxation because it is a political subdivision of the State of Florida.  See 26 U.S.C. § 115.[11]

Disposing of a case with issues almost identical to those presented in the instant case, United States District Judge Patricia C. Fawsett, Chief Judge, determined that "every district court to have considered the merits of such a suit has dismissed all federal claims based on § 501(c)(3) of the Internal Revenue Code." Kabeller v. Orlando Reg'l Healthcare Sys., Inc., Case No. 6-04-cv-1106-Orl-19DAB, at *6 (M.D. Fla. Aug. 11, 2005).  Further, Chief Judge Fawsett explained:

> Uniformly, courts have ruled as a matter of law that (1)
> acceptance of a federal tax exemption pursuant to §
> 501(c)(3) creates neither a contractual relationship
> between the exempt organization and the United States nor
> a charitable trust for the benefit of the public and (2)
> even if such a contract or trust existed, § 501(c)(3)

---

[11] Defendant further notes that it is exempt from state taxation pursuant to Florida Statue Section 196.199(1).

does not confer on alleged third party beneficiaries a private right to sue, and thus, such individuals have no standing to enforce the provisions of the statute.

Id. at *6.[12]

---

[12] Chief Judge Fawsett cites the following district court decisions which also support this Court's determination in the instant case:

See Cygan v. Resurrection Med. Ctr., Case No. 04 C 4168 (N.D. Ill. July 27, 2005) (relying on Watts v. Advocate Health Care Network, Case No. 04 C 4062 (E.D. Ill. Mar. 30, 2005)); Bobo v. Christus Health, 227 F.R.D. 479 (E.D. Tex. Apr. 26, 2005); Amato v. UPMC, 371 F. Supp. 2d 752 (W.D. Pa. Apr. 21, 2005); Ellis v. Phoebe Putney Health Sys., Inc., Case No. 1:04-cv-80 (M.D. Ga. Apr. 8, 2005); Corely v. John D. Archibald Mem. Hosp., Inc., Case No. 1:04-cv-110 (M.D. Ga. Mar. 31, 2005); Watts, Case No. 04 C 4062 (E.D. Ill.); Kolari v. New York-Presbyterian Hosp., 2005 WL 710452 (S.D.N.Y. Mar. 29, 2005); Valencia v. Mississippi Baptist Med. Ctr., Inc., 363 F. Supp. 2d 867 (S.D. Miss. Mar. 29, 2005); Fields v. Banner Health, Case No. CIV-04-1297 (D. Ariz. Mar. 23, 2005); Jellison v. Florida Hosp. Healthcare Sys., Inc., Case No. 6:04-cv-1021 (M.D. Fla. Mar. 14, 2005); Wright v. St. Dominic Health Servs, Inc., 2005 WL 743339 (S.D. Miss. Mar. 1, 2005); Quinn v. BJC Health Sys., 364 F. Supp. 2d 1046 (E.D. Mo. Mar. 1, 2005); Sabeta v. Baptist Hosp. of Miami, Inc., Case No. 04-21437-CIV (S.D. Fla. Feb. 23, 2005); Schmitt v. Protestant Mem'l Med. Ctr., Inc., Case No. 04-cv-00577 (S.D. Ill. Feb. 23, 2005); Hagedorn v. St. Thomas Hosp., Inc., Case No. 3:04-0526 (M.D. Tenn. Feb. 7, 2005) (adopting Lorens v. Catholic Health Care Partners, 356 F. Supp. 2d 827 (N.D. Ohio Jan. 13, 2005)); Peterson v. Fairview Health Serv., 2005 WL 226168 (D. Minn. Feb. 1, 2005); Daly v. Baptist Health, Case No. 4:04-cv-789 (W.D. Ark. Jan. 31, 2005); Washington v. Med. Ctr. of Cent. Georgia, Inc., Case No. 5:04-cv-185 (M.D. Ga. Jan. 21, 2005); Hogland v. Athens Regional Health Serv., Inc., Case No. 3:04-cv-50 (M.D. Ga. Jan. 21, 2005) (adopting opinion in Washington, Case No. 5:04-cv-185 (M.D. Ga.)); Shriner v. ProMedica Health Sys., Inc., 2005 WL 139128 (N.D. Ohio Jan. 21, 2005); Hudson v. Cent. Georgia Health Serv., Case No. 5:04-cv-301 (M.D. Ga. Jan. 13, 2005); Lorens, 356 F. Supp. 2d 827; Ferguson v. Centura Health Corp., 358 F. Supp. 2d 1014 (D. Colo. Dec.

It is clear that Plaintiff's claims in relation to Section 501(c)(3) must fail.  It is well established that "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'"  <u>Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 470 U.S. 451, 465-466 (1985)(quoting <u>Dodge v. Bd. of Educ.</u>, 302 U.S. 74, 79 (1937)).

The plain language of Section 503(c)(3) lacks an indication that Congress intended to create a contract between the United States and the entity upon which tax-exempt status is conferred.  Section 503(c)(3) merely lists the requirements an entity must satisfy in order to qualify for tax-exempt status.  It is noted that Plaintiff failed to cite a single citation of authority in support of his argument that such an implied contract exists.  This is likely because no court has found that such a contract exists.[13]

---

29, 2004); <u>Burton v. William Beaumont Hosp.</u>, 347 F. Supp. 2d 486 (E.D. Mich. Dec. 3, 2004); <u>Darr v. Sutter Health</u>, Case No. C 04-02624 (N.D. Cla. Nov. 30, 2004).

<u>Kabeller</u>, Case No. 6-04-cv-1106-Orl-19DAB, at *6-7.

[13] Plaintiff has argued that Congress intended to provide uninsured patients an enforceable third-party contract right under the Hill-Burton Act, 42 U.S.C. § 291, <u>et</u> <u>seq.</u>  Authority exists in support of this proposition, <u>see</u> <u>Saine v. Hosp. Auth. of Hall County</u>, 502 F.2d 1033, 1034 (5th Cir. 1974); <u>Organized Migrants in Cmty. Action, Inc. v. James Archer Hosp.</u>, 325 F.Supp. 268, 271

In addition, assuming _arguendo_ that a contract exists between the United States and Defendant, it is clear that Plaintiff would have no standing to bring a claim as a beneficiary of the contract.

---

(S.D. Fla. 1971), however, Plaintiff is not successful in demonstrating to this Court how the provisions of the Hill-Burton Act extend to or apply to Section 501(c)(3) which governs tax exemptions for charitable institutions, and Plaintiff is not suing under the Hill-Burton Act.   United States District Judge John Antoon II, adjudging a case with issues nearly identical to those presented in the instant case, compared and contrasted the provisions of Section 501(c)(3) and the Hill-Burton Act.   _Inter alia_, Judge Antoon noted:

> [Section] 501(c)(3) and the Hill-Burton Act are similar to the extent that Congress enacted both statutes to encourage hospitals to provide charitable medical care. That, however, is the extent of the similarity.   In contrast to § 501(c)(3), the Hill-Burton Act does not grant tax exemptions but provides federal funds to states and private parties to assist in constructing and modernizing public and nonprofit hospitals.   The Hill-Burton Act requires that, in consideration for the receipt of federal funds, a hospital must agree to provide a 'reasonable volume' of medical services to those unable to pay.   No such requirement exists for a hospital merely seeking tax-exempt status under the Tax Code.   Another, and perhaps more important distinction between § 501(c)(3) and the Hill-Burton Act is that the Hill-Burton Act expressly provides that enforcement of the obligations undertaken by a hospital in return for the funds is not left solely to the Government but may be pursued by a private party.   The Tax Code, on the other hand provides only a party denied § 501(c)(3) tax-exempt status an opportunity to challenge such denial of exempt status, and only authorized government officials may sue to enforce its provisions.   Cases construing the Hill-Burton Act are, therefore, inapposite and unpersuasive with regard to whether § 501(c)(3) gives rise to contractual rights.

_Jellison v. Fla. Hosp. Healthcare Sys._, Case No. 6-04-cv-1021-JA-KRS, 2005 U.S. Dist. LEXIS 8036, at *13-14 (M.D. Fla. March 14, 2005)(internal citations omitted).

Section 501(c)(3) does not contain an express statutory provision granting a private right of action under the statute, and no court has implied a private right of action to enforce Section 501(c)(3). This Court sees no reason to imply a private right of action under Section 501(c)(3), in fact, to do so would seem particularly imprudent in light of the lack of evidence of legislative intent to create such a private right of action. See generally, Love v. Delta Air Lines, 310 F.3d 1347, 1352 (11th Cir. 2002)(noting that the Supreme Court has "gradually receded" from its decision in Cort v. Ash and that legislative intent to create a private right of action has become the "touchstone" of the Court's analysis).[14]

Accordingly, Counts One, Three and Four, to the extent that such Counts are based on Section 501(c)(3), should be dismissed.

### 2. Defendant's Duties Under the EMTALA

The EMTALA "places obligations of screening and stabilization upon hospitals and emergency rooms who receive patients suffering from emergency medical conditions." Roberts v. Galen of Virginia, 525 U.S. 249, 250 (1999). The Eleventh Circuit has noted that the EMTALA was enacted to prevent hospitals from "patient dumping," the

---

[14] In Cort v. Ash, 422 U.S. 66 (1975), the United States Supreme Court enumerated four factors courts should consider in determining whether to imply a private right of action: (1) whether the statute creates a federal right for the plaintiff; (2) whether there is any indication of legislative intent either to create or deny a private right of action; (3) whether it would be consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and, (4) whether the cause of action is one traditionally relegated to state law. (Id. at 78.)

practice employed by "private hospital emergency rooms [to] refuse to treat indigent patients by transferring them to public hospitals or turning them away." Holcomb v. Monahan, 30 F.3d 116, 117 n.2 (11th Cir. 1994).

In addition to requiring emergency medical screening and stabilization, the Act prohibits "participating" hospitals from delaying the "provision of an appropriate medical screening . . . or further medical examination and treatment . . . in order to inquire about an individual's method of payment or insurance status." 42 U.S.C. § 1395dd(h).[15] The Eleventh Circuit has analyzed the requirement of "appropriate medical screening" and has determined that such language "only requires a hospital to provide indigent patients with a medical screening similar to one which they would provide any other patient." Holcomb, 30 F.3d at 117. The Act provides a private right of action for individuals who suffer "personal harm" resulting from a hospital's violation of the act.[16]

Plaintiff asserts that before Defendant screened and treated

---

[15] Defendant has not contested that it is a "participating" hospital, as defined by 42 U.S.C. § 1395cc and dd.

[16]Section 1395dd(d)(2)(A)of the Act states: "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, on a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate."

Plaintiff and putative class members with emergency medical conditions, Defendant "analyzed their ability to pay" for medical care and mandated that Plaintiff and putative class members "sign form contracts agreeing to pay LMHS in full for unspecified and undiscounted medical charges." (Doc. # 4 at ¶ 73.)  Plaintiff alleges that Defendant refused to treat Plaintiff and putative class members unless they agreed to pay for the medical services in full or signed a form contract to that effect. (Id.)

Defendant does not reach the substance of Plaintiff's argument concerning the EMTALA in its motion to dismiss.  Defendant has simply asserted that Plaintiff's cause of action under the EMTALA is time-barred due to the to the two-year statute of limitations contained in the EMTALA which states that no claim may be brought under the EMTALA which is "more than two years after the date of the violation with respect to which the action is brought." 42 U.S.C. § 1395dd(d)(2)(C).  It is not disputed that Plaintiff sought emergency medical treatment at Defendant's hospital on April 1, 2001.  As previously noted, Plaintiff filed this action on July 7, 2004, more than three years after seeking medical treatment from Defendant on April 1, 2001.

Plaintiff asserts that his EMTALA claim is not time-barred because Defendant has engaged in a course of conduct emanating from the initial violation of the EMTALA within the last two years. Specifically, Plaintiff contends that Defendant harassed Plaintiff

concerning his hospital bill at least until late 2002 and that Defendant sued Plaintiff on January 17, 2003 concerning Plaintiff's delinquent hospital bill.

Plaintiff cites no authority for his position that bill collection activity can constitute a violation of the EMTALA or toll it statute of limitations. This court declines to read the provisions of the EMTALA as so expansive as to encompass the Defendant's bill collection policies. As noted <u>supra</u>, the EMTALA's limited purpose is to require emergency rooms to screen and stabilize patients with emergency medical conditions regardless of their insurance status. The manner in which Defendant attempts to secure payment for its services does not seem to be actionable under the EMTALA. Accordingly, Defendant's claim under the EMTALA is time-barred.

Further, even if Plaintiff's cause of action were not time-barred, dismissal of Plaintiff's EMTALA claim would still be mandated because Plaintiff has not alleged to have suffered a "personal harm" which would be compensated under Florida law as a "personal injury." Indeed, the Florida Supreme Court defined the scope of "personal injuries" in 1889 as follows:

> The damages for personal injuries include, and are limited to, the natural and immediate consequences of the wrongful act. They include . . . (1) expenses of surgical and medical attendance and nursing, and (2) bodily pain, taking into account loss of time, the extent and probable duration of the injury, its effect on the health, the mental and physical powers, the capacity for labor, the pursuit of an occupation, and the earning of

money.

Florida Railway & Navigation Company v. Webster, 5 So. 714, 720 (Fla. 1889)(citations omitted).  Plaintiff's alleged economic injuries and "other damages" do not qualify as "personal injuries" under Florida law.

Thus, Count Six of Plaintiff's Amended Complaint, which alleges a claim for violations of the EMTALA, should be dismissed.

### C.  State Law Claims

As this Court has determined that Plaintiff's federal law claims must be dismissed, only Plaintiff's claims pursuant to Florida law remain.  Pursuant to 28 U.S.C. § 1367(c), this Court may decline to exercise supplemental jurisdiction over pendent state law claims.  In Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), the Supreme Court instructed: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity –will point toward declining to exercise jurisdiction over the remaining state law claims."  The Eleventh Circuit has further noted that "if the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of the state claims." Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999)(citing L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)(citing United Mine Workers v. Gibbs, 383

U.S. 715, 726 (1966).

Therefore, this Court declines to exercise jurisdiction over Plaintiff's state law claims, which shall be dismissed without prejudice for reassertion in state court within the time parameters set forth in 28 U.S.C. § 1367(d).

Accordingly, it is now

**ORDERED, ADJUDGED, and DECREED:**

1.   Defendant Lee Memorial Health System's Motion to Dismiss (Doc. # 57) is **GRANTED.**

2.   Counts One, Three, Four, and Six of the Complaint are **DISMISSED WITH PREJUDICE** to the extent that they assert claims based on 26 U.S.C. § 501(c)(3) or 42 U.S.C. § 1395dd.

3.   All other claims, to the extent that they assert claims based on state law, are **DISMISSED WITHOUT PREJUDICE.**   Plaintiffs are free to reassert their state law claims in state court within the time parameters set forth in 28 U.S.C. § 1367(d).

4.   All other pending motions are **DENIED** as moot.

5.   The Clerk of Court is directed to close this case and enter judgment accordingly.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida, this 25th day of August, 2005.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: counsel of record